1

2

3

4

5

6

7

8    # UNITED STATES DISTRICT COURT

9    EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11    JOSHUA SNYDER, | Case No.  1:18-cv-01063-BAM (PC) |
| 12             Plaintiff, | ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE |
| 13        v. | |
| 14    JIM ROBERTSON, et al., | FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION |
| 15             Defendants. | **FOURTEEN-DAY DEADLINE** |
| 16 | |
| 17 | |

18        Plaintiff Joshua Snyder is a state prisoner proceeding pro se and in forma pauperis in this

19    civil rights action pursuant to 42 U.S.C. § 1983.  The action was transferred to this Court on

20    August 9, 2018.  On January 9, 2019, the Court screened Plaintiff's complaint and granted him

21    leave to file an amended complaint.  (ECF No. 10.)  Plaintiff's first amended complaint, filed on

22    March 11, 2019, is currently before the Court for screening.  (ECF No. 14.)

23        **I.      Screening Requirement and Standard**

24        The Court is required to screen complaints brought by prisoners seeking relief against a

25    governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

26    § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

27    or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

28

1

1    relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

2         A complaint must contain "a short and plain statement of the claim showing that the

3    pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

4    required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

5    conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

6    Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken

7    as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores,

8    Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

9         To survive screening, Plaintiff's claims must be facially plausible, which requires

10   sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

11   for the misconduct alleged.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S.

12   Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted

13   unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the

14   plausibility standard.  Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

15        **II.      Plaintiff's Allegations**

16        Plaintiff is currently housed at Immanuel House in Riverside, California.  The events in

17   the complaint are alleged to have occurred while Plaintiff was housed at the California

18   Correctional Institution, Tehachapi ("CCI").  Plaintiff names the following defendants: (1) Chief

19   Deputy Warden Jim Robertson; (2) Warden Kimberly Holland; (3) Officer Kevin Cannon; (4)

20   Officer Greg Zucker; (5) Officer T. Parrish; (6) Lieutenant T. Harris; and (7) Associate Warden

21   G. Garcia.

22        Claim 1

23        In Claim 1, Plaintiff asserts that he was deprived of legal materials without due process of

24   law, including notice and a hearing.  He alleges that on July 3, 2014, he was transferred to the

25   California Department of Corrections and Rehabilitation.  He was sentenced to 8 years and 8

26   months after being found guilty by a jury in two separate cases.  Plaintiff filed two direct appeals,

27   which eventually were exhausted to the California Supreme Court.

28        In 2015, Plaintiff filed multiple civil actions against the County of Riverside while he was

1    incarcerated at Valley State Prison.  These cases reportedly involved injury to Plaintiff's physical

2    and mental health based on unsanitary living/cell conditions and inadequate medical care, and

3    they also involved loss of property.  As of the filing of his amended complaint, those cases were

4    still being litigated.

5         Between April 2015 and September 2016, Plaintiff was actively litigating five cases while

6    at Valley State Prison.  He identifies three of these cases as follows:  "Civil State Tort:  Superior

7    Court, County of Riverside, Snyder v. Stan Sniff, case #MCC1500295;" "Civil Right action:

8    Snyder v. Riverside County et al., Case #ED-CV-15-00817-DSF(SP);" and "Snyder v. Riverside

9    County et al, Case # ED-DV-15-01859-VAP (DFM)."  (ECF No. 14 at p. 14.)

10        Plaintiff was transferred to CCI on September 26, 2016 with seven large boxes and one

11   56-quart plastic storage container containing legal documents relating to each active case, along

12   with legal reference books and personal property.  Four boxes contained Superior Court

13   transcripts, trial transcripts, appellate court briefs, replies, case documents, discovery documents,

14   court filing and legal reference books.

15        On the date of his transfer, Plaintiff alleges that Defendant Cannon was authorized to

16   place Plaintiff's legal materials in storage.  Subsequently, on January 1, 2017, Defendant Zucker

17   was authorized to place Plaintiff's legal materials in storage.  Plaintiff reportedly informed

18   Defendant Cannon and Zucker that he was actively litigating five cases.  As a result, between

19   September 26, 2016 and February 3, 2017, Defendant Cannon and Zucker directed Plaintiff to use

20   an administrative process to obtain access to his stored legal materials and legal books.  Plaintiff

21   claims that Defendants Cannon and Zucker were authorized to limit and control the amount of

22   legal materials and legal books "that could be maintained in a cell-living area and fitting into a

23   one cubic foot box." (Doc. No. 14 at p. 15.)  In order for Plaintiff to swap legal files and legal

24   books, he had to initiate the administrative process by generating a CDCR Form 22, delivering it

25   and then waiting for a response.  Plaintiff contends that these "directives or customs" delayed his

26   ability to access relevant files in each active case.  (Id.)  Plaintiff asserts that he was forced to

27   choose between active cases to pursue based on court-established deadlines.  Plaintiff further

28   asserts that this denied him the opportunity to litigate each case simultaneously.

1      Plaintiff alleges that Defendants Cannon and Zucker authorized the deprivation of his

2   legal materials and legal books relating to his two criminal convictions along with almost 1,600

3   pages of discovery responses by the opposing party in <u>Snyder v. Riverside County et al.</u>, Case

4   No. 15-01859-VAP (C.D Cal) by an administrative process that did not give him notice and an

5   opportunity to be heard before depriving him of a protected interest.  Plaintiff further alleges that

6   because of the deprivation of specific property, he was shut out of federal court on May 18, 2017,

7   and prevented from seeking relief by way of two federal habeas petitions challenging official acts

8   that affected each trial.  Plaintiff reports that he was expected to complete the two petitions on or

9   before May 18, 2017, because his state review concluded on May 18, 2016.

10      Plaintiff avers that CDCR maintains a state-wide written policy and procedure for storing

11   and disposing of prisoners' legal materials.  In contrast, Plaintiff contends that individual

12   defendants in superior positions maintained a wide-spread unauthorized practice of depriving

13   prisoners of their legal property without procedural fairness.  Plaintiff alleges that this allowed

14   Defendant Cannon and Zucker to take advantage of unknowing prisoners, like Plaintiff, and to

15   deprive them of their legal property without fear of discipline.

16      Claim 2

17      In Claim 2, Plaintiff alleges that he was denied the right to petition the court for redress of

18   grievances post-conviction when he was denied his legal property and effectively denied his

19   ability to present a federal habeas petition.  Plaintiff contends that he was in the process of filing

20   two federal habeas corpus petitions between May 18, 2016 and May 18, 2017 to challenge two

21   separate convictions in state court.

22      In 2015, after both his direct appeals were denied by the Fourth Appellate Court, Plaintiff

23   drafted two habeas petitions for California Supreme Court review.  Both petitions were denied *en*

24   *banc* on May 18, 2016.  Plaintiff's resources for writing these petitions included a California

25   Habeas Handbook, trial transcripts, clerk transcripts, appellate briefs and the court opinion from

26   his direct appeal and other court filings.  Plaintiff claims that these resources were being used to

27   draft two federal habeas petitions and without these resources he would lose a real chance to draft

28   a winning habeas petition.  Plaintiff further claims that had he not been deprived of these

4

1 resources then his grounds for a habeas petition would have been arguable.

2 Plaintiff alleges that the deprivation of his legal materials and legal books caused him to

3 miss statutory deadlines to initiate both federal habeas petitions, denying him access to federal

4 court. Plaintiff reportedly filed a CDCR 602 appeal on February 21, 2017, in an apparent effort

5 to regain his legal property in order to meet statutory court deadlines. The appeal was assigned to

6 Defendants T. Parrish, G. Garcia (or Doe), T. Harris and Jim Robertson. Plaintiff's appeal was

7 fully exhausted, and he appears to claim that the reviewing defendants merely acquiesced in the

8 conduct of Defendants Cannon and Zucker.

9 Claim 3

10 In Claim 3, Plaintiff asserts that defendants conspired to deprive him of his rights under

11 the Fourteenth Amendment to the United States Constitution and under Article 1, section 7(a) of

12 the California Constitution.

13 Plaintiff alleges that CDCR's Department Operation Manual ("DOM") prescribes how

14 Defendant Holland and his subordinates must store and dispose of a prisoner's legal materials.

15 Plaintiff further alleges that all CDCR's employees must read and sign documents upon their

16 hiring stating that they have full knowledge and understanding of the DOM. Plaintiff claims that

17 despite knowledge of the DOM, Defendants Cannon, Zucker, Parrish, Garcia and/or DOE, Harris,

18 and Robertson concentrated their actions to hide due process violations committed by Defendant

19 Cannon and Zucker that ultimately deprived Plaintiff of his liberty interest after they denied his

20 602 appeal at the first and second levels. Plaintiff asserts that these defendants are no strangers to

21 this Court because they have been named by prisoners alleging violations of their protected

22 interests. Plaintiff contends that the conspiracy is demonstrated by the First and Second Level

23 responses to his 602 appeal.

24 On March 13, 2017, Defendant Parrish was assigned Plaintiff's 602 appeal.

25 On April 10, 2017, Defendant Parrish interviewed an unidentified CCI Facility property

26 officer. Plaintiff believes that officer was Defendant Zucker. Plaintiff asserts that these two

27 defendants conspired to hide wrongful conduct by Defendants Canon and Zucker, reportedly by

28 claiming that the missing property could not be located and there was a property card showing all

1  property that Plaintiff was allowed and all property that was confiscated.

2      On April 17, 2017, Defendant Parrish interviewed Defendant Cannon.  Plaintiff believes

3  they discussed Plaintiff's appeal prior to that date.  Defendant Cannon reportedly stated that

4  Plaintiff arrived at CCI with an abundance of property not allowed at the facility or an amount of

5  property that was over the limit.  The unallowed property was confiscated and Plaintiff chose to

6  donate it.  Defendant Cannon claimed to have disposed of the property per departmental policy.

7  Plaintiff alleges that Defendants Cannon's statements contradict statements made in the appeal

8  response because if Defendant Cannon disposed of Plaintiff's property, then there was no need to

9  search for it.  Plaintiff further alleges that no property disposition form was generated as required

10  by the DOM.

11      Plaintiff alleges that co-conspirators recited talking points that Plaintiff had too much

12  property or unallowed property disposed of pursuant to departmental policy.  Plaintiff claims,

13  however, that his legal materials and legal books pertaining to open active cases did not apply to

14  these reasons for depriving him of legal property.

15      On April 25 and April 27, 2017, Defendant Parrish finalized the First Level appeal

16  response with a high-ranking superior DOE or Defendant Garcia.  Defendant Garcia signed off as

17  the final reviewer on April 27, 2017.  Plaintiff contends that no defendant addressed his claims

18  regarding legal materials and legal books, even though those materials were identified in his

19  appeal.  He also claims that no defendant discussed CDCR Form 104 documenting his cash,

20  personal securities and property, which is used to document the proper disposition of unissued

21  property and funds.  Plaintiff claims it was Defendant Cannon's duty to generate this form on

22  September 26, 2017.

23      Plaintiff further alleges that Defendants Harris and Roberson entered into the civil

24  conspiracy by conducting a sham investigation into the wrongful conduct of Defendants Cannon,

25  Zucker and Parrish and exonerated them by way of the Second Level Appeal Response.

26  Defendant Harris reportedly failed to address Plaintiff's claim to his legal documents and legal

27  books as stated in his 602 appeal.  Instead, he allegedly relied upon the co-conspirators' talking

28  points to deny intervention.  Defendant Robertson agreed by signing on June 30, 2017.  Plaintiff

1    asserts that these defendants conspired to cover-up the wrongful conduct of Defendant Cannon

2    and Zucker that deprived him of his right to challenge the State Court's denial of two post-

3    conviction habeas corpus actions in federal court.

4         Claim 4

5         In Claim 4, Plaintiff alleges that Defendants Holland, Robertson, Garcia, Harris and

6    Parrish failed to supervise and failed to train subordinates regarding prescribed policy and

7    procedures.  Plaintiff further alleges that each related case filed against defendants accusing them

8    of violating prisoners' constitutional rights circumstantially establishes an ongoing, widespread

9    practice or custom of depriving prisoners of their legal property, access to courts, safety and civil

10   rights.  Plaintiff asserts that 100s of prisoner have set forth these types of violations in 602

11   appeals over several years.

12        Plaintiff alleges that the filing of several related cases naming Defendant Holland

13   demonstrates that he was placed on notice of a history of widespread abuse to prisoners'

14   constitutional rights and protected interests.  Plaintiff contends that Defendant Holland failed to

15   cure or abate the problem and failed to fix the policy and procedures to collect and store legal

16   property relating to active and open cases prior to Plaintiff's arrival at CCI.

17        Plaintiff also alleges that Defendant Robertson, Garcia, Harris and Parrish were placed on

18   notice of a history of widespread abuse to prisoners' constitutional rights and protected interests

19   by the weight of numerous 602 appeals and may have been on notice by civil lawsuits.  Each

20   defendant failed to cure or abate the problems or stop the custom and practice that was the

21   moving force of the constitutional violation.  Plaintiff claims that each supervisor knowingly

22   acquiesced in the unconstitutional behavior of subordinates and violated a statutory duty to

23   inquire about such behavior and be responsible to prevent it.

24        Claim 5

25        In Claim 5, Plaintiff alleges that Defendants Cannon and Zucker acted with gross

26   negligence, depriving him of his personal property.  Between September 26, 2016 and February

27   3, 2017, Defendants Cannon and Zucker were property officers charged with receiving and

28   releasing prisoners and prisoners' property.  Defendants were negligent or careless resulting in

1    Plaintiff's personal property being lost, destroyed or converted to CCI's use.

2          On February 10, 2017, Plaintiff realized the extent of the missing property caused by

3    Defendants Cannon and Zucker when a Mule Creek State Prison property officer inventoried

4    Plaintiff's property in front of him.

5          On February 14, 2017, Plaintiff authored a letter to his past appellate attorney, Reed

6    Webb, regarding the missing or lost trial transcripts and appellate transcripts for his criminal

7    cases.  Plaintiff also authored a letter to Amy Wong, an attorney for Riverside County, regarding

8    the missing evidentiary documents that were previously provided by Ms. Wong's firm.  Bother

9    letters were fruitless in replacing the lost documents.

10          On February 21, 2017, Plaintiff implemented his administrative remedies, demanding

11    return or replacement of his trial transcripts, appellate transcripts, court transcripts, legal books

12    and other personal property.  Plaintiff claims that his appeal was rubberstamped at the Third

13    Level.  His appeal was formally exhausted on October 24, 2017.

14          On July 26, 2017, Plaintiff filed his Government Claim seeking the return of property

15    and/or monetary compensation.  He was not given notice of decision or rejection.

16          Claim 6

17          In Claim 6, Plaintiff alleges that Defendant Cannon and Zucker acted with deceit based on

18    intentional misrepresentations to deprive Plaintiff of his personal property.  On September 29,

19    2016, Defendant Cannon allegedly represented to Plaintiff that he would be transferred back to

20    Valley State Prison within a couple of weeks because of Plaintiff's dependence on a four-wheel

21    walker.   Defendant Cannon also promised to provide Plaintiff with essential property pending his

22    transfer.  This include food, hygiene, winter clothing, appliances and access to active case files.

23    Defendant Cannon provided the property as promised, but Defendant Cannon did not have

24    Plaintiff sign any property receipt or property inventory form.  At the time, the omission did not

25    alarm Plaintiff because it was agreed that Defendant Cannon was to keep the remaining property

26    until transfer.

27          Plaintiff transferred to Mule Creek State Prison on February 3, 2017.  Plaintiff was

28    directed to take his property to Defendant Zucker.  Plaintiff requested that Defendant Zucker

8

1    speak with Defendant Cannon regarding the property that Defendant Cannon withheld pending

2    transfer, including legal property and personal property.  Defendant Zucker represented that he

3    would locate the described property, talk to Defendant Cannon and inventory all property.

4         On February 3, 2017, Plaintiff was escorted by Defendant Zucker from E Facility to D

5    Facility because the prison was under a security emergency to headcount prisoners.  Plaintiff was

6    not to be counted and any delay would cause a resulting delay in his transfer.  After entering R&R

7    on D Facility, Plaintiff recognized that most of his property was already packed into eight small

8    apple boxes and that easily identifiable personal items and legal property were missing.  Plaintiff

9    asked Defendant Zucker about the missing property.  Defendant Zucker represented that all

10   Plaintiff's property was within the eight boxes and recorded on the Property Inventory Form.

11   Defendant Zucker directed Plaintiff to sign the prepared and highlighted Inmate Property

12   Inventory Form.  When Plaintiff requested the form and missing property, Defendant Zucker

13   represented to Plaintiff that his transfer would be cancelled without a signature.  Plaintiff alleges

14   that the representations of Defendants Cannon and Zucker were false, reckless and without regard

15   for the truth and risk to Plaintiff's protected interest.  Plaintiff alleges that Defendant Cannon

16   intended for Plaintiff to rely on his representation, so that Plaintiff would not generate complaints

17   by way of a 602 Appeal against Defendant Cannon and/or generate a habeas corpus petition.

18   Plaintiff further alleges that Defendant Zucker intended for Plaintiff to rely on his representations

19   so that Plaintiff would sign the property form and continue transfer without incident.

20        Plaintiff asserts that at all times between September 26, 2016 and February 3, 2017, he

21   had no option but to rely on the representations of Defendants Cannon and Zucker. Plaintiff

22   claims that he became aware of the missing property on February 10, 2017, at Mule Creek State

23   Prison.

24        Claim 7

25        In Claim 7, Plaintiff alleges that Defendants Holland, Robertson, Garcia, Harris and

26   Parrish are vicariously and directly liable for the failure to train and supervise their subordinates

27   to follow DOM policies and procedures.  Plaintiff asserts that each superior knew, or in the

28   exercise of reasonable diligence, should have known that subordinates like Defendants Cannon

1   and Zucker were customarily depriving prisoners of property without following prescribed policy

2   and procedure.  Plaintiff alleges that despite knowledge of the custom, these superiors failed to

3   adequately train or supervise Defendants Cannon and Zucker in the performance of their duties.

4   Plaintiff asserts that the failure to train and supervise was the proximate cause of his injuries.

5          Claim 8

6          In Claim 8, Plaintiff alleges that Defendants Robertson, Garcia, Harris and Parrish

7   conspired to injure him.

8          Relief

9          As relief, Plaintiff seeks compensatory and punitive damages.

10   **III.    Discussion**

11   **A.  Access to Courts**

12          In Claims 1 and 2, and in his related allegations, Plaintiff appears to assert a claim for

13   denial of access to the court to file his habeas corpus petitions.  Plaintiff has a constitutional right

14   of access to the courts, and prison officials may not actively interfere with his right to litigate.

15   Silva v. Di Vittorio, 658 F.3d 1090, 1101-02 (9th Cir. 2001) overruled on other grounds as stated

16   by Richey v. Dahne, 807 F.3d 1202, 1209 n.6 (9th Cir. 2015). The right of access to the courts,

17   however, is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and §

18   1983 civil rights actions. Lewis v. Casey, 518 U.S. 343, 354–55 (1996). A claim "is frivolous

19   where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325

20   (1989).

21          In order to frame a claim of a denial of the right to access the courts, a prisoner must

22   allege facts showing that he has suffered "actual injury," a jurisdictional requirement derived

23   from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with

24   respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to

25   present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also

26   Alvarez v. Hill, 518 F.3d 1152, 1155 n. 1 (9th Cir. 2008) (finding that district properly granted

27   summary judgment because prisoner had not "allege[d] injury, such as inability to file a

28   complaint or defend against a charge" resulting from deficiencies in access to legal materials)

1   (quoting Lewis, 518 U.S. at 353 & 353 n. 4).

2       Plaintiff fails to state a cognizable claim for denial of access to the courts.  First,

3   Plaintiff's amended complaint does not state sufficient facts to demonstrate that he was pursuing

4   non-frivolous direct criminal appeals, habeas corpus proceedings, or § 1983 civil rights actions.

5   Plaintiff's conclusory statements are not sufficient.

6       Second, and critically, Plaintiff's assertion that he suffered harm relative to his civil rights

7   and habeas petitions because he was unable to access his legal property while at CCI is

8   unsupported by the factual allegations in his amended complaint.  As a practical matter, Plaintiff

9   does not allege that he was denied all access to his legal materials while at CCI.  Rather, he

10  claims only that he was forced to choose which active case to work on because of limits placed on

11  the amount of materials that he could possess at any one time.  That Plaintiff was unable to

12  manage his time is not sufficient harm.

13      Moreover, with respect to his habeas petitions, Plaintiff admits that he had a full year to

14  complete those petitions beginning in May 2016.  Plaintiff did not transfer to CCI until late

15  September 2016, and he remained there for four months.  There is no indication in Plaintiff's

16  complaint that he was precluded from working on his habeas petitions for the approximate eight-

17  month period between May 2016 and February 2017, both before and during his time at CCI.

18  Thus, Plaintiff was not wholly deprived of his legal property or precluded from completing his

19  habeas petitions despite any purported lack of his legal property after his transfer from CCI.

20  Plaintiff's conclusory statements that he suffered an injury are not sufficient to support a claim.

21      **B.  Deprivation of Property**

22      Prisoners have a protected interest in their personal property. Hansen v. May, 502 F.2d

23  728, 730 (9th Cir. 1974). An authorized, intentional deprivation of property is actionable under

24  the Due Process Clause; see Hudson v. Palmer, 468 U.S. 517, 532, n. 13 (1984) (citing Logan v.

25  Zimmerman Brush Co., 455 U.S. 422, 435–36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th

26  Cir. 1985), however, "an unauthorized intentional deprivation of property by a state employee

27  does not constitute a violation of the procedural requirements of the Due Process Clause of the

28  Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available,"

11

1  Hudson, 468 U.S. at 533.

2        Plaintiff complains about the wrongful, unauthorized taking, dissemination and

3  destruction of his property by Defendants Canon and Zucker. Due Process is therefore satisfied if

4  there is a meaningful post-deprivation remedy available to him. Hudson, 468 U.S. at 533. Plaintiff

5  has an adequate post-deprivation remedy available under California law. Barnett v. Centoni, 31

6  F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–895). Accordingly, Plaintiff's

7  complaint fails to state a cognizable claim for the alleged deprivation of his personal property.

8  Plaintiff has been unable to cure this deficiency.

9        **C.      Grievance Procedure**

10        To the extent Plaintiff seeks to impose liability against Defendants Robertson, Garcia,

11  Harris and Parrish arising out of their review and denial of his property grievance, he may not do

12  so.  Plaintiff does not have a constitutionally protected right to have his appeals accepted or

13  processed. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639,

14  640 (9th Cir.19 88). The prison grievance procedure does not confer any substantive rights upon

15  inmates and actions in reviewing appeals cannot serve as a basis for liability under section 1983.

16  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir.1993); see also Wright v. Shannon, No. 1:05-cv-

17  01485-LJO-YNP PC, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that

18  prison officials denied or ignored his inmate appeals failed to state a cognizable claim under the

19  First Amendment). Denial or refusal to process a prison grievance is not a constitutional violation.

20  Rushdan v. Gear, No. 1:16-cv-01017-BAM (PC), 2018 WL 2229259, at *6 (E.D. Cal. May 16,

21  2018). Accordingly, Plaintiff fails to state a cognizable claim arising out of the screening,

22  investigation or processing of his grievances or complaints.  Plaintiff has been unable to cure this

23  deficiency.

24        **D.      Conspiracy**

25        To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an

26  agreement or a meeting of the minds to violate his constitutional rights, and an actual deprivation

27  of those constitutional rights. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir.2010); Franklin v. Fox,

28  312 F.3d 423, 441 (9th Cir. 2001).

1          For the reasons discussed above, Plaintiff has not alleged an actual deprivation of his

2    constitutional rights sufficient to support a claim for conspiracy under section 1983.  Plaintiff

3    makes general allegations that the supervisory defendants were reviewing his appeals in the

4    furtherance of some conspiracy. This also is not sufficient.  Plaintiff has not pled the basic

5    elements of a civil conspiracy: an agreement and concerted action amongst the defendants in the

6    furtherance of that agreement, and that each defendant conspired to violate Plaintiff's

7    constitutional rights. See also Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1047 (9th Cir. 2008)

8    (noting that a bare allegation of a conspiracy is almost impossible to defend against where

9    numerous individuals are concerned).

10   **E.      Supervisory Liability**

11         Insofar as Plaintiff is attempting to hold Defendants Holland, Robertson, Garcia, Harris

12   and Parrish liable based solely on their supervisory roles, he may not do so. Liability may not be

13   imposed on supervisory personnel for the actions or omissions of their subordinates under the

14   theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cty., Ariz., 609

15   F.3d 1011, 1020–21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir.

16   2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Supervisors may be held liable only

17   if they "participated in or directed the violations, or knew of the violations and failed to act to

18   prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652

19   F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

20   Plaintiff may also allege the supervisor "implemented a policy so deficient that the policy 'itself is

21   a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"

22   Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted).

23         Here, Plaintiff's amended complaint fails to adequately allege that Defendants Holland,

24   Robertson, Garcia, Harris and Parrish participated in or directed any purported violation of

25   Plaintiff's constitutional rights.  As discussed above, Plaintiff has not stated a cognizable claim for

26   violation of his constitutional rights relative to the deprivation of his property.  Plaintiff's

27   amended complaint also fails to plausibly allege that these defendants knew of any purported

28   violations and failed to act to prevent them. Additionally, Plaintiff's amended complaint fails to

1    allege that any of these supervisory defendants implemented a policy so deficient that it was a

2    repudiation of Plaintiff's rights and the moving force of any constitutional violation.

3                **F.       Failure to Train/Failure to Supervise**

4         Plaintiff alleges that Defendants Holland, Robertson, Garcia, Harris and Parrish should be

5    held liable based on failure to train or failure to supervise theory.  A "failure to train" or "failure

6    to supervise" theory can be the basis for a supervisor's liability under § 1983 in only limited

7    circumstances, such as where the failure amounts to deliberate indifference. See City of Canton v.

8    Harris, 489 U.S. 378, 387-90 (1989). To establish a failure-to-train/supervise claim, a plaintiff

9    must show that "'in light of the duties assigned to specific officers or employees, the need for

10   more or different training [or supervision] [was] obvious, and the inadequacy so likely to result in

11   violations of constitutional rights, that the policy-makers ... can reasonably be said to have been

12   deliberately indifferent to the need.'" Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002)

13   (quoting Canton, 489 U.S. at 390).

14        Ordinarily, a single constitutional violation by an untrained employee is insufficient to

15   demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563

16   U.S. 51, 62 (2011). Instead, a pattern of similar constitutional violations by untrained employees

17   is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train.

18   Id.

19        Here, Plaintiff's amended complaint fails to adequately demonstrate a pattern of similar

20   constitutional violations by untrained or unsupervised employees.  Rather, Plaintiff alleges only a

21   single incident in which his property was purportedly wrongly taken by Defendants Canton and

22   Zucker.  Plaintiff's conclusory and unsupported allegation regarding hundreds of other inmates is

23   not sufficient to state a cognizable claim based on failure to train or supervise.  Plaintiff has been

24   unable to cure this deficiency.

25                **G.       State Law Claims**

26        Plaintiff appears to be asserting state law claims, including claims for negligence.  Under

27   28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the

28   "district courts shall have supplemental jurisdiction over all other claims that are so related to

                                          14

1  claims in the action within such original jurisdiction that they form part of the same case or

2  controversy under Article III of the United States Constitution," except as provided in subsections

3  (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, ...

4  the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S.

5  715, 726 (1966). Although the Court may exercise supplemental jurisdiction over state law

6  claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367.

7  As Plaintiff has not stated a cognizable claim for relief under federal law, it will be recommended

8  that the Court decline to exercise jurisdiction over Plaintiff's state law claims.

9  **IV.    Conclusion and Recommendation**

10  Plaintiff's amended complaint fails to state a cognizable federal claim for relief.  Despite

11  being provided with relevant pleading and legal standards, Plaintiff has been unable to cure the

12  deficiencies in his complaint by amendment, and thus further leave to amend is not warranted.

13  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

14  Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a

15  district judge to this action.

16  Furthermore, for the reasons stated above, IT IS HEREBY RECOMMENDED as follows:

17  1.  The federal claims in this action be dismissed based on Plaintiff's failure to state a

18      cognizable claim upon which relief may be granted; and

19  2.  The Court decline to exercise supplemental jurisdiction over Plaintiff's purported state

20      law claims.

21

22  These Findings and Recommendation will be submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen

24  (14) days after being served with these Findings and Recommendation, Plaintiff may file written

25  objections with the Court. The document should be captioned "Objections to Magistrate Judge's

26  Findings and Recommendation." Plaintiff is advised that failure to file objections within the

27  specified time may result in the waiver of the "right to challenge the magistrate's factual

28

15

findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **July 20, 2020**                    /s/ *Barbara A. McAuliffe*      _
                                         UNITED STATES MAGISTRATE JUDGE

16